Mr. Justice Humphreys
delivered the opinion of the courts
We are not advised how the chancellor could have allowed a larger or greater sum. We think that he did equity in full to complainant as far as the record discloses. It was-his duty to find from the evidence facts satisfactory to the mind upon which to base a decree. The record discloses no» fact that is sufficient to'operate upon our minds as an inducement to interrupt the decree by way of charging the defendant with any greater burden than the justice has done. The father, the defendant, has preserved the corpus of the real estate, and there is no evidence that there was any personal property more than sufficient to defray the expenses of the intestate. There is no evidence from which it. would be equitable to draw - a conclusion that the father had not managed the small income for his children in the best mode that could have been done. He sent his daughter to school, giving her “ the best schooling in his reach.” Yet he preserved the body of her maternal patrimony. He says that he would not have been able to give her the advantages she received but by applying the proceeds of the rents of her grandmother’s patrimony. There is no evidence to contradict this statement of his. The child has received the benefits of the property, and still has the body of it left. A court of equity is often called upon by guardians for permission to sell and finally dispose of the corpus of a ward’s estate for its support and maintenance. Yet we have, in this case, the instance of a charge being loosely made, unsustained by proofs, that large incomes were derived front the property, when the child has received the benefits of association with intelligence and intellect, virtue and refinement, and elevat *561 ing ideas, as far as the schools can confer these blessings, and after settling down in life, she has a house left into which she can invite her husband to make it his abiding place. A father is in duty bound to support and maintain his children. This is a duty relative to circumstances. He is also entitled to their services. He is only bound to keep them from want for the actual necessaries of life. Whatever may be the fortune of a father, no court could send its mandate into the home castle to regulate the expenditures of the family. Society regulates itself, however. The natural affection of parents will induce them to expend their incomes upon the parts of themselves. The father, in this ease, says that he did not have the means to give his children the advantages of expansion, and he was forced to use their own funds if they received these advantages. We have already intimated that a court of equity would have caused a guardian to part with the body of the separate estate, if necessary, to give to the ward the benefits of education, according to the circumstances of the application. It would have acted in loco parentis. But here the parent acted better than the court would have done. He has preserved the corpus of the estate of his children; and says that his intention has always been to hand over to his children their property at their majority, clear of cost to them, although the cost of their maintenance ■exceeded their income. This is the character of a guardian that a court of equity will always delight to intrust with a small estate. There is nothing in the testimony to cast a shadow of doubt over the entire correctness of this statement. The fact is that he is doing what he says has been his intention. The chancellor having found the fact that there is a balance due the complainant of 84,769.63, we see every reason not to increase the charge against defendant. Some members of the court think that no interest ought to be allowed on his balanceas found; while others are of opinion that it should be. We have come to the conclusion to affirm the decree with the modification of allowing interest on the ascertained balance from August 28, 1874, the time of exhibiting the bill of complaint.
Counsel will please draw a decree in accordance with this opinion.